UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANDRE MCCASKILL,                       Case No. 11-12824

        Plaintiff,                       Patrick J. Duggan
v.                                       United States District Judge

JOHN DETTLOFF,                           Michael Hluchaniuk
                                         United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 47)**

**I.     PROCEDURAL HISTORY**

Plaintiff filed a *pro se* complaint on June 30, 2011. (Dkt. 1). This matter was referred for all pretrial proceedings on September 16, 2011. (Dkt. 15). On July 13, 2012, the undersigned issued a report and recommendation on defendant's motion for summary judgment, concluding that there were genuine issues of material fact regarding plaintiff's retaliation claim, except that the issuance of the major misconduct ticket could not form the basis of a retaliation claim because plaintiff was convicted. (Dkt. 22, Pg ID 126). On September 18, 2012, Judge Duggan adopted the report and recommendation. (Dkt. 25).

Defendant Dettloff filed a second motion for partial summary judgment on March 31, 2014. (Dkt. 47). Plaintiff filed a response on April 21, 2014. (Dkt.

1

48). A reply was filed on May 7, 2014. (Dkt. 50). The parties filed their joint statement on July 23, 2014. (Dkt. 54). The parties have agreed that plaintiff's claim for mental and emotional damages should be dismissed. *Id*. Pursuant to notice, the Court held a hearing on July 30, 2014. This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for partial summary judgment be **GRANTED**.

## II. FACTUAL BACKGROUND

The detailed factual background of this matter may be found in the Report and Recommendation dated July 13, 2012. (Dkt. 22). As to the adverse-action element of retaliation, the Court previously ruled that the misconduct ticket issued by Dettloff cannot form the basis of a retaliation claim. Plaintiff also alleged, as adverse actions, that Dettloff placed the plaintiff in segregation and broke his MP3 player; the Court found that these actions could constitute adverse action. With his amended complaint, plaintiff added a claim for a broken television. With regard to the placement in segregation, the Court found that the record was not clear as to why the plaintiff was sent to segregation for a shakedown.

According to Dettloff, discovery has provided additional admissions from plaintiff not previously available to him or the Court. There was a fight on the yard, and Officer Nnanabu ordered that plaintiff and three other inmates be

escorted to segregation for a strip search. (Dkt. 47, Ex. A, Deposition of McCaskill, p. 23, lines 13-25; pp. 24-27; p. 28, lines 1-17). According to defendant, the record is now clear that Dettloff did not take part in this action. In addition, the plaintiff filed only one grievance in this case regarding the allegations contained in the complaint. (Dkt. 47, Ex. B, Affidavit of Richard Russell, ¶¶ 6-7). That grievance does not grieve a broken television. (Dkt. 47, Ex. B, Grievance JCF-11-02-252).

### III. DISCUSSION

#### A. Personal Involvement

##### 1. Legal standards

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *Id.* "[I]f a prisoner

violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id*. at 395. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*; *Thaddeus-X*, 175 F.3d at 399.

        2.      Parties' arguments

Dettloff argues that he is entitled to qualified immunity because he was not personally involved in placing plaintiff in segregation; rather, plaintiff admitted that he was taken to segregation by another officer. Dettloff asserts that because plaintiff has admitted that another officer, Nnanabu, was the person who sent him (and three other inmates) to segregation for a search due to a fight breaking out on the prison yard, the trip to segregation cannot satisfy the adverse-action element because it was not an action taken by defendant and it also fails the causation element for the same reason. Thus, Dettloff contends that, under the clearly established law, he is entitled to qualified immunity regarding the retaliation claim for the trip to segregation.

Plaintiff argues that Dettloff was personally involved in plaintiff's

4

placement in segregation, citing his own affidavit and the deposition of Officer Nnanabu. Plaintiff's deposition says that Dettloff yelled at him that he should not have complained to his supervisor and that he would "get" plaintiff, if he had to set him up. This occurred at approximately 6:00 pm and plaintiff was taken to segregation at 6:30 p.m. (Dkt. 48-2). Plaintiff cites Office Nnanabu's deposition, relying on the fact that Nnanabu does not recall taking plaintiff to segregation. (Dkt. 48-3, Pg ID 372).

Plaintiff also argues that even if Dettloff was not personally involved, he is liable for all actions taken in furtherance of a conspiracy to retaliate against plaintiff. Plaintiff describes testimony from Dettloff that he believed plaintiff should be placed at a higher security level, and that he had a plan with other officers to modify the behavior of prisoners who were "troublemakers" so their security level would be increased. Dettloff also testified that he thought plaintiff "got the hint that he was being watched" and that he was out to make sure plaintiff was at the proper security level. According to plaintiff, Dettloff crossed the line in this case and, even if he did not directly order plaintiff to segregation, he was part of a retaliatory conspiracy targeting plaintiff to move him to a higher level of security by writing him tickets, sending him to segregation, and limiting his freedoms.

Plaintiff also contends that there also remains a question of fact as to

5

whether Dettloff was personally involved in plaintiff remaining in segregation after he packed up plaintiff, in violation of prison procedures. (Dkt. 48, Ex. C at p. 84 (Defendant explained that his affidavit attached to defendant's previous Motion for Summary Judgment was false); Compare Ex. D with Ex. C at pp. 35, 55-57).

Plaintiff also argues that a genuine issue of fact exists as to whether defendant was personally involved in plaintiff remaining in segregation after having been cleared on a search and hold. Specifically, Plaintiff was sent to segregation for a strip and hold with other prisoners who were in the vicinity of a fight in the yard. (Dkt. 48, Ex. G at pp. 24, 26, 28 and 35). All of these prisoners were then released, but plaintiff was the only one who remained after defendant called segregation to advise that plaintiff would be staying in segregation. (Dkt. 48, Exs. G at pp. 32, 36, and C at p. 57). According to plaintiff, there are multiple disputes as to whether Dettloff's call was prompted by a pack up of plaintiff's property in violation of prison procedures or a cell search to look for weapons after plaintiff was sent to segregation for a "strip and hold." (Dkt. 48, Ex. C at p. 84 (Dettloff explained that his affidavit was false); Compare Ex. D with Ex. C at pp. 35, 55-57). It cannot be disputed, however, that plaintiff remained in segregation after Dettloff's call to advise that plaintiff should remain there. (Dkt. 48, Exs. G at pp. 32, 36, and C at p. 57).

6

In reply, Dettloff argues that the exhibits cited by plaintiff do not support his position. Dettloff argues that plaintiff's affidavit does not claim any personal knowledge of Dettloff ordering him to segregation or that Dettloff instructed Nnanabu to take plaintiff segregation. As to Nnanabu's deposition, while the plaintiff argues that Nnanabu's denial of remembering being the person who escorted the plaintiff to segregation somehow creates a material fact question, Dettloff contends that it does not matter whether it was Nnanabu (as the plaintiff claims) or someone else who took the plaintiff to segregation. Dettloff assumed in his motion for partial summary judgment that it was Nnanabu, as the plaintiff claims, but if the plaintiff wants to now claim that it was someone else, according to Dettloff, it really does not matter and has no bearing on his motion. What matters is that it was not Dettloff, and the reason for the escort to segregation, as the plaintiff himself testified, was because he and some other prisoners did not leave the area after a fight.

Despite having testified that the trip to segregation was due to being in the vicinity of the fight on the yard, plaintiff argues that circumstantial evidence supports that Dettloff must have somehow be involved: this is because Dettloff yelled at him and "was suspiciously attuned to the events occurring in the yard." (Dkt. 48, pp. 18-19, Page ID 348-49). According to Dettloff, the plaintiff forgets to mention that news of his detainment was broadcast over the radio, and Dettloff

also saw him being escorted to segregation. (Dkt. 48-8, p. 12, Pg ID 418). Dettloff also contends that, without any foundation or supporting evidence, the plaintiff goes on to assert in his response that Dettloff did not receive a call from segregation advising that the plaintiff was there. (Dkt. 48, p. 19, Pg ID 349). For alleged support, defendant contends that plaintiff boldly misrepresents Dettloff's interrogatory responses, claiming that Dettloff failed to identify the conversation with the segregation officer. (Dkt. 48, p. 19, Pg ID 349 (citing "Ex. O at #3 (failing to identify this conversation)"). Although the plaintiff attached Dettloff's response to interrogatory 3, defendant says that plaintiff purposefully omitted page 2 of the responses, which has the question asked and also contains the response to interrogatory number 2, where Dettloff identified the conversation with the segregation officer. (Dkt. 51, Ex. D). Dettloff contends that plaintiff's "transparent efforts to distort the facts to create a material dispute should be rejected by the Court." Dettloff contends that there is no genuine factual dispute that he had no involvement in the plaintiff's trip to segregation, and he is, therefore, entitled to qualified immunity.

Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). Once the

8

plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). There is no causation where the defendant is not the decision-maker. *See Smith*, 250 F.3d at 1038 (holding that one of the defendants' comments did not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted that the defendant making the comment was not the decision-maker in the case); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on plaintiff's retaliation claim because they were not involved in the decision to terminate the plaintiff); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (holding that statements by nondecision-makers cannot suffice to satisfy the plaintiff's burden of demonstrating animus). The finding of no causation even occurs where some defendants instigated the adverse action, *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999), or where the defendants' recommendations carried great weight with the final decision-maker, *Cohen v. Smith*, 58 Fed.Appx. 139, 143-44 (6th Cir. 2003).

       3.      Analysis and Conclusion

As noted above, the Court previously determined that any retaliation claim

arising from the misconduct ticket is barred because plaintiff was convicted of that misconduct. Here, plaintiff admits that he was taken to segregation based on events in the yard and that Dettloff did not escort him to segregation. Thus, plaintiff was in segregation before Dettloff searched his cell, found the contraband and wrote him up for ticket. While plaintiff was detained in segregation longer because of the contraband found in his cell (as Dettloff called and had the longer hold placed), that additional detention was directly due to the conduct for which he was convicted. Thus, any adverse action in keeping plaintiff detained after the contraband was found is subsumed in and precluded by the misconduct ticket conviction.

    Plaintiff argues that he never would have been sent to segregation in the first place had Dettloff not somehow conspired to have him taken to segregation. However, there is no evidence to support this claim. While plaintiff contends that Dettloff made the statement that he was "out to get him," even if true, plaintiff does not dispute that he was taken to segregation for proper reasons in the first place, regardless of who escorted him there. (Dkt. 47-2, Pg ID 308-310). Plaintiff explained at his deposition that, after he was going to be released from segregation, Dettloff called and said to hold plaintiff because of the found razor blade. *Id*. Plaintiff then told the officers in segregation that, "Man, I told you all he's going to set me up." *Id*. at Pg ID 310. However, the alleged "set up" of the

10

razor blade is precisely the conduct for which plaintiff was convicted and this Court already determined could not form the basis of a retaliation claim.

Plaintiff attempts to avoid this result by claiming that this was all part of the same conspiracy and that his belongings never should have been packed up in the first place, under prison policy, because he was not going to be kept in segregation long enough.  Even if that is true, plaintiff does not explain how improperly packing up his belongings rises to the level of a constitutional violation.  As to the conspiracy claim, it is well-settled that "conspiracy claims must be pled with some degree of specificity" and that "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1539-40 (6th Cir. 1987), citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").  A civil conspiracy under §1983 is "an agreement between two or more persons to injure another by unlawful action." *Sizemore v. Forsthoefel*, 2013 WL 2950673, *3 (N.D. Ohio 2013), citing *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985).  A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *Id.*,

11

citing *Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). Notably, where all of the participants in the alleged conspiracy are members of the same collective entity, there are no two separate people to form a conspiracy and such a claim fails. *Amadasu*, 514 F.3d at 507.[1]

Here, plaintiff does not explain or offer any evidence suggesting that Dettloff conspired with other officers to ensure that plaintiff was taken to segregation in the first place. Dettloff's alleged statements about being out to get plaintiff do not establish any kind of conspiracy with other officers. Indeed, plaintiff testified that another officer thought Dettloff's behavior in packing up plaintiff's property was "fishy." (Dkt. 47-2, Pg ID 310). Additionally, plaintiff identifies no other potential members of a conspiracy who are not employed by the same entity as Dettloff, thus any conspiracy claim also fails for this reason. Based on the foregoing, the undersigned concludes that no retaliation claim against Dettloff based on plaintiff's detention can survive summary judgment.

---

[1] The "'intracorporate conspiracy' doctrine" provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v. The Christ Hospital*, 514 F.3d 504, 507 (6th Cir. 2008); *see also Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 510 (6th Cir. 1991); *Coley v. Lucas Co., Ohio*, 2014 WL 273194 (N.D. Ohio 2014) (applying "intracorporate conspiracy" doctrine to § 1983 conspiracy claim); *Lundy v. City of Pontiac*, 2013 WL 5372873 (E.D. Mich. 2013) (applying "intracorporate conspiracy" doctrine to § 1983 conspiracy claim).

C.  Exhaustion of Administrative Remedies

1.  Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can

13

function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93, quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in *Jones* was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v.*

14

*Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."). In *Baker v. Vanderark*, 2007 WL 3244075, *7 (W.D. Mich. 2007), the court held that, under the PLRA and *Woodford*, "both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court."

      2.    Parties' arguments

Plaintiff filed a grievance concerning his broken MP3 player and headphones, but he did not specifically mention his allegedly broken television. Dettloff contends that his claim for the broken television should be dismissed as unexhausted. Plaintiff filed one grievance and in it, he complains of the broken MP3 player and headphones, but not a television. Thus, according to Dettloff, plaintiff failed to exhaust his administrative remedies as to the allegedly broken television, and that claim should be dismissed.

According to plaintiff, the evidence shows that he exhausted his administrative remedies when he included in his grievance a request for reimbursement of his "property," and when he complained to Officer Holden that other property, including his television, was damaged. *See Porter v. Nussle*, 534

15

U.S. 516, 532 (2002) and *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003); *see also* Dkt. 48, MDOC Policy Directive 03.02.130 at ¶ P, Exs. E, F, G at p. 53, C at p. 59, H at 19, and I at 9, 14, 16, and 29.  In his brief, plaintiff goes through a lengthy explanation that there was no interview during the grievance process, no one involved remembers what property was really identified during that process, and the grievance responses do not address that either.  Plaintiff appealed every adverse decision on the grievance through the three-step process.  In his appeals, he advised that ARUS Holden never interviewed him, that defendant's statement had multiple inconsistencies on its face, that there was never an order for defendant to pack up plaintiff's property, and that ARUS Holden never addressed his broken property. (Dkt. 48, Ex. F).  In the Step II Response, Warden D. Scutt summarized the grievance, response, and appeal, then concluded that plaintiff was taken to administrative segregation, was bonded out, and was found guilty on the misconduct charge written by Officer Dettloff. (Dkt. 48, Ex. Q).  Again, plaintiff points out that there was no reference to or investigation of plaintiff's damaged property noted. *Id*.

     Plaintiff also argues that if this Court finds that the cell inventory and/or pack up inventory are essential to justify his opposition to defendant's motion, the Court should deny defendant's motion according to Federal Rule of Civil Procedure 56(d)(1) because these documents are unavailable to plaintiff, as

16

defendant has been unable to produce them. Specifically, the inventories allegedly completed during defendant's pack up of plaintiff's property were destroyed (*see* Dkt. 48, Ex. C at p. 107) and the cell inventory sheet that should have been completed on plaintiff moving into his cell has been lost. (Dkt. 48, Ex. J).

In reply, defendant points out that plaintiff admits that although he filed a grievance about a broken MP3 player and headphones, he did not file a grievance about a broken television. After quoting the text of the plaintiff's grievance about the MP3 player (where he does not mention a television), the plaintiff suggests that "ARUS Holden admits that there is some ambiguity as to what Plaintiff meant by 'property' and she could not recall the specific property that Plaintiff alleged was at issue. *See* Ex. I at 29." (Dkt. 48, pp. 24-25, Pg ID 354-55). According to defendant, reading the deposition page quoted reveals the reason for the alleged "ambiguity": the plaintiff's counsel did not show Holden a copy of the grievance while questioning her about its contents. (Dkt. 48-10, p. 12, Pg ID 457, lines 7-8 ("I don't have the actual Grievance to say what property he's referring to"), lines 14-16 ("I don't have the actual Grievance in which he's alleging what property was taken. He just says, 'lost property.'")). According to Dettloff, plaintiff's grievance speaks for itself, and the plaintiff's argument that he could have added additional claims not found in the grievance itself had he been interviewed is not supported by any case law cited by the plaintiff. Even at step II, the plaintiff

17

stated, "Nor was my broken MP-3 player and headphones addressed"; a television was never mentioned. (Dkt. 47-3).

### 3. Analysis and conclusion

Plaintiff did not mention a television during the grievance process and there is no evidence that he did so. Plaintiff does a remarkable job concocting a scenario where this is somehow due to the review process and the failure to interview him, but the whole purpose of the grievance process is to give prison officials the opportunity to address an issue. While prison officials did not actually address the broken MP3 player and headphones, they had the *opportunity* to do so because those items were identified in the grievance. And, even where plaintiff complained that they failed to address his property claim, he again specifically referred to his MP-3 player and headphones and did not identify the television. Under these circumstances, prison officials never had the opportunity to address the issue of a lost television and therefore, this claim is not properly exhausted.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for partial summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

18

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 31, 2014                    s/Michael Hluchaniuk
                                                                  Michael Hluchaniuk
                                                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on <u>October 31, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Clifton B. Schneider, John M. Sier, Kailtin Abplanalp Brown.</u>

                                                  <u>s/Tammy Hallwood</u>
                                                  Case Manager
                                                  (810) 341-7887
                                                  tammy_hallwood@mied.uscourts.gov